UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

DAVID F.[1],

                              Plaintiff,      20-CV-6479-FPG

v.                                          DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.

## INTRODUCTION

On September 25, 2014, Plaintiff filed an application for disability insurance benefits ("DIB"), alleging disability beginning January 1, 2012. Tr.[2] at 52. After the application was initially denied, Plaintiff timely requested a hearing and appeared before Administrative Law Judge ("the ALJ") Brian Kane on June 8, 2017. Tr. 22-46. On August 17, 2017, the ALJ issued an unfavorable decision finding Plaintiff not disabled. Tr. 15-18. After the Appeals Council denied Plaintiff's request for review, Plaintiff brought an action pursuant to Title II of the Social Security Act (the "Act") seeking review of the final decision of the Commissioner. On June 14, 2019, the Honorable Frank P. Geraci, Jr., approved the parties' stipulation to remand the matter for further proceedings. Tr. 723-24. On June 28, 2019, following the judgment issued by this Court, the Appeals Council vacated the ALJ's August 17, 2017 decision and remanded the matter for further evaluation of Plaintiff's mental impairments. Tr. 728-29.

---

[1] In accordance with the Standing Order dated November 18, 2020, regarding the identification of non-government parties in Social Security opinions, available at http://www.nywd.courts.gov/standing-orders-and-district-plans, Plaintiff is identified by her first name and last initial.

[2] "Tr." refers to the administrative record in the matter. ECF No. 10.

1

On February 27, 2020, Plaintiff appeared at a new hearing with his counsel, Ida M. Comerford, Esq., and testified before Brian Kane, the same ALJ he appeared in front of in 2017. Tr. 656-80. The ALJ issued an unfavorable decision on March 18, 2020. Tr. 646-50. Plaintiff did not request review of the ALJ's decision by the Appeals Council, nor did the Appeals Council assume jurisdiction, making the ALJ's decision the final decision of the Commissioner. Subsequently, Plaintiff brought the instant action pursuant to Title II of the Act seeking review of the final decision of the Commissioner.[3] ECF No. 1. Presently before the Court are the parties' competing motions for judgment on the pleadings. ECF Nos. 12, 13. For the reasons set forth below, Plaintiff's motion for judgment on the pleadings is DENIED, and the Commissioner's motion for judgment on the pleadings is GRANTED.

## LEGAL STANDARD

### I. District Court Review

The scope of this Court's review of the ALJ's decision denying benefits to Plaintiff is limited. It is not the function of the Court to determine *de novo* whether Plaintiff is disabled. *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 447 (2d Cir. 2012). Rather, so long as a review of the administrative record confirms that "there is substantial evidence supporting the Commissioner's decision," and "the Commissioner applied the correct legal standard," the Commissioner's determination should not be disturbed. *Acierno v. Barnhart*, 475 F.3d 77, 80-81 (2d Cir. 2007). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Brault*, 683 F.3d at 447-48 (internal citation and quotation marks omitted).

---

[3] The Court has jurisdiction over this matter under 42 U.S.C. § 405(g).

II. **Disability Determination**

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At Step One, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to Step Two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to Step Three.

At Step Three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, *id.* § 404.1509, the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id.* § 404.1520(e)-(f).

The ALJ then proceeds to Step Four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id.* If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* § 404.1520(g). To do so, the

3

Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I. The ALJ's Decision

The ALJ found that Plaintiff met the insured status requirements of the SSA on March 31, 2012. Tr. 648. At Step One of the sequential analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity from the alleged onset date of January 1, 2012 through the date last insured of March 31, 2012. *Id.* At Step Two, the ALJ found that there were no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment. *Id.* As such, the ALJ determined that Plaintiff was not under disability from January 1, 2012 through March 31, 2012. Tr. 650.

### II. Analysis

Plaintiff argues that the ALJ substituted his own judgment for all medical opinion evidence contained in the record when he wrongfully determined that Plaintiff did not have a medically determinable impairment. ECF No. 12-1 at 8-15. He further argues that the ALJ's error was so egregious that it requires remand solely for calculation of benefits. *Id.* at 14-15. The Commissioner objects, arguing that the ALJ properly evaluated medical evidence contained in the record and determined that a single treatment note from Plaintiff's treating psychiatrist was insufficient to establish the existence of a disabling medical impairment during the alleged period of disability. ECF No. 13-1 at 12-14. The Court agrees.

As a general matter, in Step Two of the analysis, the ALJ is required to determine whether an impairment or combination of impairments that has lasted or is expected to last for a continuous period of at least 12 months limits claimant's physical or mental ability to perform basic work activities. *See* 20 C.F.R. § 404.1505. The regulations define "basic work activities" as "the abilities and aptitudes necessary to do most jobs," including "walking, standing, sitting, lifting, sdpushing, pulling, reaching, carrying, or handling;" "[c]apacities for seeing, hearing, and speaking;" "[u]nderstanding, carrying out, and remembering simple instructions;" "[r]esponding appropriately to supervision, co-workers and usual work situations;" and "[d]ealing with changes in a routine work setting." 20 C.F.R. § 404.1522(b).

Although Plaintiff bears the burden of proof at Step Two, it is not a heavy burden. The Second Circuit has long held that "the standard for a finding of severity under Step Two of the sequential analysis is *de minimis* and is intended only to screen out the very weakest cases." *McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir. 2014) (citing *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995)). Despite this lenient standard, the "'mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment' is not, by itself, sufficient to render a condition 'severe.'" *Taylor v. Astrue*, 32 F. Supp. 3d 253, 266 (N.D.N.Y. 2012) (internal citation omitted). In order for a claimant to meet his burden under Step Two he must show that the impairment was medically determinable and significantly limited his ability to perform basic work activities. *Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003). The regulations provide that regardless how genuine the claimant's complaints about his symptoms may appear to be, he must be found not disabled at Step Two of the analysis in the absence of medical signs or laboratory findings[4] demonstrating that there is a medically

---

[4] The regulations explain that *laboratory findings* mean one or more physiological or psychological phenomena that can be shown by the use of medically acceptable laboratory diagnostic techniques, like chemical tests (such as blood

5

determinable physical or mental impairment. *See* SSR 16-3P, 2017 WL 5180304, at 3 (S.S.R. Oct. 25, 2017).

Because Plaintiff became last insured for Title II purposes on March 31, 2012, he must establish that his disability existed on or before that date. *See* 42 U.S.C. § 423(a)(1)(A) and (D). However, he has not done so. Plaintiff argues that the ALJ erred in not finding his depression and anxiety to be severe medically determinable impairments in Step Two of the analysis and in doing so relies on the medical opinions submitted by Drs. Wells and Brennan, who identified various work-related limitations in Plaintiff's functioning (Dr. Wells' opinion), and indicated that such limitations also met two Listings (Dr. Brennan's testimony). ECF No. 12-1 at 8-14. Plaintiff submits that the ALJ incorrectly applied the treating physician rule and weighed the opinion evidence submitted by Drs. Wells and Brennan. *Id.* at 8-15. Indeed, the ALJ afforded little weight to both opinions because of their inconsistency with the limited evidence in the record for the three month period of the alleged disability. Tr. 650. Considering that this was the ALJ's rationale behind the weight afforded to both opinions, the Court would have expected Plaintiff to build his argument around the specific medical evidence in the record that was consistent with Drs. Wells and Brennan's findings about Plaintiff's limitations stemming from anxiety and depression, which, as a result, would have persuaded the Court to disagree with the ALJ. *See Shrecengost v. Colvin*, No. 14-CV-506S, 2015 WL 5126117, at *3 (W.D.N.Y. Sept. 1, 2015) ("[p]laintiff bears the burden of establishing a severe impairment at step two by furnishing medical and other evidence of the existence thereof as the Commissioner may require, and will not be considered disabled if such

---

tests), electrophysiological studies (such as electrocardiograms and electroencephalograms), medical imaging (such as X-rays), and psychological tests. 20 C.F.R. § 404.1502(c) (emphasis added). As to the *signs*, the regulations provide that they "must be shown by medically acceptable clinical diagnostic techniques. Psychiatric signs are medically demonstrable phenomena that indicate specific psychological abnormalities, e.g., abnormalities of behavior, mood, thought, memory, orientation, development, or perception, and must also be shown by observable facts that can be medically described and evaluated." *Id.* § 404.1502(g) (emphasis added).

evidence is not provided") (internal citations omitted). However, nowhere in his brief did Plaintiff identify any evidence in the record beyond the two medical opinions that supported his position that his depression and anxiety were, in fact, disabling medically determinable impairments during the period in question. Plaintiff's reliance on the two opinions without discussing any other evidence of record is insufficient for this Court to overturn the ALJ's determination because the regulations clearly provide that a medically determinable impairment cannot be established by a medical opinion, a claimant's statement of symptoms, or a diagnosis, and, instead, must be demonstrated by clinical and laboratory diagnostic techniques, and by objective medical evidence, such as signs and/or laboratory findings obtained from acceptable medical sources. *See* 20 C.F.R. §§ 404.1502(c) and (f), 404.1521.

This matter has, indeed, been previously remanded by the Appeals Council for proper consideration of the February 2, 2012 treatment note issued by Dr. Wells, which the ALJ wrongfully thought had originated in July 2012, after the expiration of Plaintiff's insured status. Tr. 728. In its remand order, the Appeals Council instructed the ALJ to reevaluate the medical evidence contained in the record, obtain evidence from a medical expert, and consider whether Plaintiff had any medically determinable impairments. Tr. 728-29. The ALJ has done exactly what was asked of him by the Appeals Council on remand when he reevaluated the medical opinion of Dr. Wells in connection with her February 2, 2012 treatment note, obtained hearing testimony of medical expert Dr. Brennan, and considered other medical evidence, such as Plaintiff's 2017 treatment by his then primary treating physician, Dr. Torpey. Tr. 646-50. The ALJ also considered Dr. Wells' treatment records issued both before and after the date last insured, and determined that they were inconsistent with the nature of limitations she identified in her 2015 opinion. Tr. 650. Having done so, the ALJ found that Plaintiff did not meet his burden and did not establish the

7

existence of a medically determinable impairment during the three months of the alleged disability because the record did not contain any medical signs or laboratory findings that would support such a finding. *Id.*

While Plaintiff is correct that the ALJ is required to give a medical opinion of a treating physician controlling weight, such determination is made only if the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. *See Rosa,* 168 F.3d at 78–79; 20 C.F.R. § 404.1527(c)(2). Here, Dr. Wells issued her opinion on June 16, 2015 – more than three years after Plaintiff's March 31, 2012 date last insured. Tr. 267-74. It is not clear whether the opinion was, in fact, a retrospective opinion that could be entitled to controlling weight, or whether it was assessing Plaintiff's functional capacity at the time Dr. Wells completed it in 2015. *See, e.g., Byam v. Barnhart,* 336 F.3d 172, 183 (2d Cir. 2003) ("[W]hile a treating physician's retrospective diagnosis is not conclusive, it is entitled to controlling weight unless it is contradicted by other medical evidence or 'overwhelmingly compelling' non-medical evidence.") (internal citation omitted); *Kruppenbacher v. Astrue,* No. 04 Civ. 4150 (WHP)(HBP), 2010 WL 5779484, at *43 (S.D.N.Y. Apr. 16, 2010), *adopt.,* No. 04 CIV. 4150 WHP, 2011 WL 519439 (S.D.N.Y. Feb. 14, 2011) ("for a retrospective opinion to be controlling, it still must be supported by a clinically acceptable diagnostic technique"); *Martinez v. Massanari,* 242 F. Supp. 2d 372, 377 (S.D.N.Y. 2003) ("[A] retrospective diagnosis by a treating physician is entitled to controlling weight unless it is contradicted by other medical evidence or 'overwhelmingly compelling' non-medical evidence.") (internal citation omitted).

Generally, the timing of a medical opinion alone would not disqualify it from being considered for purposes of disability determination because "medical records that post date the

date last insured may be pertinent evidence of the severity and continuity of impairments existing before the date last insured or may identify additional impairments which could reasonably be presumed to have been present and to have imposed limitations as of the date last insured." *Carlson v. Barnhart*, No. 3:05CV1584(SRU)(WIG), 2006 WL 2926818, at *5 n.5 (D. Conn. Aug. 30, 2006) (citing *Lisa v. Sec. of Health & Human Serv.*, 940 F.2d 40, 44 (2d Cir.1991)); *see also Dailey v. Barnhart*, 277 F. Supp. 2d 226, 233 n.14 (W.D.N.Y. 2003) ("Medical opinions given after the date that [the claimant's] insured status expired are taken into consideration if such opinions are relevant to her condition prior to that date."); *Moscatiello v. Apfel*, 129 F. Supp. 2d 481, 489 (S.D.N.Y. 2001) ("[E]vidence of plaintiff's condition at a later time was relevant to the extent that it shed light on plaintiff's condition as of the date she was last insured.").

It is apparent that Dr. Wells' 2015 opinion is relevant to Plaintiff's claims that he was suffering from severe depression and anxiety because she has diagnosed Plaintiff with both conditions, as well as alcohol and drug addiction, and sociopathic traits, and identified a wide range of symptoms, which, in her opinion, would significantly limit Plaintiff's performance in a workplace.[5] Tr. 267, 274. Dr. Wells listed Plaintiff's psychotropic medication and indicated that his prognosis was poor. Tr. 267. However, even though she stated that she had been treating Plaintiff since 1997, Dr. Wells noted that her treatment was limited, and she had not had any contact with Plaintiff for three years prior to issuing the opinion. *Id.* She also could not opine as to whether Plaintiff's limitations would increase, and noted that Plaintiff was a malingerer at times. Tr. 274.

---

[5] Dr. Wells opined that Plaintiff's performance in a workplace would be limited for more than 20% of an 8-hour workday in such categories as getting along with co-workers and peers, and dealing with work stress, however, she also opined that Plaintiff's performance in all other mental domains would either not be affected or would be precluded for less than 10% or 20%. Tr. 267-74.

9

In his decision, the ALJ noted Dr. Wells' specialty, analyzed the consistency of the opinion with her treatment records, and discussed the length of her treatment when the ALJ determined that Dr. Wells' finding that Plaintiff had mild to marked limitations in mental functioning was inconsistent with her treatment notes. Tr. 649-50. The Court is, thus, satisfied with the ALJ's consideration of the factors he was required to apply. *See Estrella v. Berryhill*, 925 F.3d 90, 95-96 (2d Cir. 2019) (internal citations omitted) (explicit recitation of each factor is not necessary as long as "the substance of the treating physician rule was not traversed"); *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) (summary order) ("We require no such slavish recitation of each and every factor where the ALJ's reasoning and adherence to the regulation are clear.").

It should be noted that even though Dr. Wells treated Plaintiff since 1997, the record of her treatment is very sparce and contains only five treatment notes from Plaintiff's visits in 2009, 2011, 2012, and 2015, none of which support the nature and severity of limitations she identified in her 2015 opinion. Tr. 615-19, 888. Specifically, Dr. Wells' 2015 medical opinion was inconsistent with her February 12, 2012 treatment note – the only record issued during the period in question – which indicates that Plaintiff's reason for returning to her for treatment was to restart his medication that he had stopped taking over six months prior to the visit. Tr. 618. Even though Plaintiff reported feeling depressed because of the recent death of his brother, he was earnest and rational during the examination, and reported "doing well" while living with his son and girlfriend. *Id.* Though Dr. Wells diagnosed Plaintiff with depression, anxiety disorder, and drug addiction, she noted that he was not employed at the time, and emphasized the need for him to have a schedule and feel productive. *Id.* Aside from noting Plaintiff's complaints and diagnosing him with depression and anxiety, the record did not contain any objective medical evidence that established that either condition was a medically determinable impairment. *See* 20 C.F.R. § 404.1521. It also

did not support the nature and severity of work-related limitations identified by Dr. Wells in her 2015 medical opinion. *See* 20 C.F.R. § 404.1508 (effective to Mar. 26, 2017) ("A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by your statement of symptoms."); *see also Monette v. Astrue*, 269 F. App'x 109, 113 (2d Cir. 2008) (ALJ did not error when he refused to afford significant weight to a retrospective opinion of plaintiff's physician because it was contradicted by the other substantial evidence in the record); *Flanigan v. Colvin*, 21 F. Supp. 3d 285, 305 (S.D.N.Y. 2014) (the ALJ properly did not afford any weight to a retrospective opinion of plaintiff's treating physician because it was inconsistent with the medical evidence and his own contemporaneous treatment records).

Dr. Wells' treatment records from outside the alleged disability period do not provide support for Plaintiff's claim that his depression and anxiety were medically determinable disabling impairments during the three months of the alleged disability period either. In fact, the three treatment notes issued between 2009 and 2011 demonstrate similar diagnoses and observations of Plaintiff being earnest, rational, alert, clear minded, relaxed, sociable, and fairly cheerful during his examinations. Tr. 615-17. Even though Plaintiff complained of increasing symptoms of depression, such complaints did not demonstrate that his depression was of such severity that it had more than a minimal impact on his life, and, instead, appeared to have been made when Plaintiff was not compliant with medication or had an unstable job. He reported that his life was "quietly comfortable," and that he was contemplating getting a second job because was not earning sufficient income from the job he had. Tr. 616.

Similarly, Dr. Wells' treatment records subsequent to the alleged disability period do not provide support for Plaintiff's claim. Specifically, the June 16, 2015 treatment note issued more

than three years after the date last insured, demonstrates that Plaintiff had not seen Dr. Wells in three and a half years, and returned to her only to obtain his medical file to apply for disability. Tr. 619. Even though Dr. Wells, once again, diagnosed Plaintiff with depression, anxiety, and sociopathic traits, she also indicated that "he has always had depression and anxiety, yet, he worked, and got by." *Id.* During the examination, despite reporting persistent depression, anxiety, and sadness, Plaintiff was coherent, rational, well-spoken, insightful with no signs of psychosis, and had excellent recent and past memory, concentration, attention, and orientation. *Id.* Even though he reported being rejected by his family, Dr. Wells noted that Plaintiff had history of being deceptive, lying, and having devious behavior that had caused him to be completely excommunicated by everyone. *Id.* She stated that Plaintiff was not very employable because he had little ambition, motivation, interest, or energy, and that he "was never a very enthusiastic worker." *Id.* In sum, Dr. Wells' examination records demonstrate that even though she had diagnosed Plaintiff with depression and anxiety during treatment, her treatment records were inconsistent with the limitations she identified in her 2015 opinion and lacked objective clinical findings to support Plaintiff's overall position that both impairments were medically determinable impairments during the alleged period of disability. *See, e.g., Flanigan*, 21 F. Supp. 3d at 303 (the record was absent of medical evidence supporting the existence of a medically determinable impairment during the two-months period that plaintiff sought disability for); *Carlson v Barnhart*, No. 3:05CV1584 (SRU)(WIG), 2006 WL 2926818, at *13 (D. Conn. Aug. 30, 2006) (opinions issued six years after plaintiff's date last insured were not medical opinions as they were not supported by clinical and diagnostic techniques, lacked reliability, and were inconsistent with the record).

For the same reasons the Court does not find error in the ALJ's evaluation of the opinion of Dr. Brennan, an impartial medical expert, whose hearing testimony the ALJ afforded limited weight. Tr. 650. Even though Dr. Brennan testified that Plaintiff's anxiety and depression were of such severity that they met two Listings (Tr. 674), his findings were not based on his review of the evidence for the specific three months of the alleged disability period, but, instead, were spread out in such a way that they included Plaintiff's entire medical record from 2007 through 2018. Tr. 672, 675-79. The evidence relevant to the alleged period of disability is dismal in this case and consists of a single note of Dr. Wells that did not contain any objective medical signs or findings to demonstrate that Plaintiff's depression and anxiety were medically determinable impairments, therefore, the ALJ properly afforded limited weight to Dr. Brennan's testimony.

That is not to say that Plaintiff's depression and anxiety did not affect his employability after the alleged disability period. The record following the expiration of Plaintiff's insured status contains evidence, including the 2017 medical opinion of his primary treating physician Dr. Torpey, suggesting that, at the very least, Plaintiff continued to be treated for anxiety and depression. Tr. 637-42, 890-903. However, such records not only lay beyond the alleged period of disability, but also do not support Plaintiff's position because Dr. Torpey had not started treating Plaintiff until two years after the expiration of his insured status. Tr. 673. *See, e.g., Dutcher v. Astrue*, No. 09-CV-1161 (LEK/VEB), 2011 WL 1097860, at *8 (N.D.N.Y. Mar. 7, 2011), *adopt.*, No. 3:09-CV-1161 (LEK/VEB), 2011 WL 1042773 (N.D.N.Y. Mar. 22, 2011) ("The seriousness of [p]laintiff's pain after the date last insured is not at issue. Any limitations resulting from that pain cannot qualify plaintiff for DIB unless she was disabled prior to her date last insured."); *Vitale v. Apfel*, 49 F. Supp. 2d 137, 142 (E.D.N.Y. 1999) ("Where a plaintiff's impairment continues and

becomes more severe after the expiration of insured status, such exacerbation of a pre-existing injury cannot form the basis for determination of an earlier disability.").

In sum, the record supports the ALJ's determination that Plaintiff failed to meet his burden of showing that he was suffering from a medically determinable impairment from his alleged onset date through the date last insured. That Plaintiff may have had mental and emotional difficulties before and after the alleged period of disability is not determinative as Plaintiff was required to show that his conditions had a disabling impact on his ability to work during the insured period. However, the medical evidence of record does not support Plaintiff's claim that he was disabled within the three months period in early 2012.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (ECF No. 12) is DENIED, and the Commissioner's motion for judgment on the pleadings (ECF No. 13) is GRANTED. The Clerk of Court is directed to enter judgment and close the case.

**IT IS SO ORDERED.**

Dated: July 13, 2021
Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court